UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:16-CV-10562-GAO

JOHN F. BUCKLEY,
Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Defendant.

OPINION AND ORDER
July 28, 2017

O'TOOLE, D.J.

John F. Buckley appeals the denial of his application for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner"). Before the Court are Buckley's Motion to Reverse the Decision of the Commissioner (dkt. no. 15) and the defendant's Motion to Affirm the Commissioner's Decision (dkt. no. 19). After consideration of the administrative record and the parties' memoranda, the Court now affirms the Commissioner's decision because there is substantial evidence in the administrative record to support the decision and no error of law was made.

I.      **Procedural History**

Buckley applied for DIB on March 12, 2013, and SSI on April 2, 2013, alleging disability beginning on November 20, 2010. (Administrative Tr. at 195, 197 [hereinafter "R."].)[2] Buckley's

---

[1] Nancy A. Berryhill is now the acting commissioner of the Social Security Administration. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Berryhill is automatically substituted as the defendant in this action.

[2] The administrative record has been filed electronically. The record is in its original paper form, with the page numbers in the lower right-hand corner of each page. Citations to the record are to the pages originally numbered, rather than to numbering supplied by the electronic docket.

applications were initially denied on May 3, 2013, (<u>id.</u> at 123, 126), and again after reconsideration on August 19, 2013. (<u>Id.</u> at 136, 139.) Buckley then requested a hearing, which was held before Administrative Law Judge Sean Teehan (hereinafter "ALJ") on August 26, 2014. (<u>Id.</u> at 32.) On September 16, 2014, the ALJ issued an unfavorable decision, finding that Buckley was not disabled within the meaning of the Social Security Act (the "Act"). (<u>Id.</u> at 11–26.) Buckley's request for review of that decision was denied by the Appeals Council on January 20, 2016. (<u>Id.</u> at 1–7.) This denial rendered the ALJ's decision the final decision of the Commissioner, and made the case suitable for review by this Court pursuant to 42 U.S.C. § 405(g).

## **II.**    **Discussion**

This Court's review of a denial of Social Security benefits is limited to an evaluation as to whether the "ALJ used the proper legal standards and found facts upon the proper quantum of evidence." <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d 652, 655 (1st Cir. 2000). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); <u>accord</u> <u>Mickevich v. Barnhart</u>, 453 F. Supp. 2d 279, 284 (D.Mass. 2006). The evidence is considered substantial when it is "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and an ALJ's determination supported by substantial evidence must be upheld "even if the record arguably could justify a different conclusion." <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (citing <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1987)). Further, deciding issues of credibility is the "prime responsibility" of the ALJ. <u>Rodriguez v. Celebrezze</u>, 349 F.2d 494, 496 (1st Cir. 1965).

On appeal, Buckley argues that the ALJ's decision should be overturned both for lack of substantial evidence in support of the decision and for legal error. Specifically, Buckley alleges that the following findings of the ALJ were not based on substantial evidence: that Buckley's

impairments, while "severe," were limited to the conditions of degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, and leg neuropathy rather than other more serious medical conditions; that Buckley does not have an impairment or combination of impairments equal in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1; that Buckley has the Residual Functional Capacity ("RFC") to perform light work, except that he could only sit for one hour at a time for a total of six hours in an eight-hour workday; that Buckley is capable of performing his past relevant work as a sales manager, as well as other sedentary work; and therefore that Buckley has not been under a disability as defined in the Act from November 20, 2010, through the date of the ALJ's decision. Buckley also argues that the aforementioned findings are based on an error of law because he failed to honor the requirement that he evaluate every medical opinion received. See 20 C.F.R. § 404.1527(c).[3]

The full administrative record is filed on the docket of this case, as is the written decision of the ALJ. There is no reason to recite the details of Buckley's medical history or his DIB and SSI application processes except as it is necessary to discuss the specific objections made to the ALJ's decision.

    A.    <u>Substantial evidence supports the finding that Buckley has the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, and leg neuropathy</u>

Buckley contends that the ALJ violated 20 C.F.R. § 404.1527(c) by not considering Hearing Exhibits #4F, #5F and #20F, which  suggest medical conditions more serious than the "severe" impairments the ALJ found to exist.[4] Exhibit #4F consists of progress notes between December 7,

---

[3] Although separate statutes and regulations exist for DIB and SSI claims, the legal standards are essentially the same. Citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

[4] An impairment is considered severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

2009, and July 8, 2013, from the South Shore Health Center detailing Buckley's medical history over the course of that time period (hereinafter "Progress Notes"). (R. at 381–410.) Exhibit #5F is a letter dated January 7, 2010, from Dr. Sushil K. Basra to Dr. Robert Baratz, in which Buckley's spinal health and the possibility of surgical intervention are discussed (hereinafter "Dr. Basra's Letter"). (Id. at 411.) Exhibit #20F is a medical report from Shields MRI Technology for Life dated November 4, 2014, which discusses the findings of an MRI of Buckley's spine (hereinafter "Shields Report"). (Id. at 552–55.)

The relevant regulation requires the SSA to evaluate every medical record it receives regarding a claimant's application. 20 C.F.R. § 404.1527(c). Contrary to Buckley's assertion, the record indicates that the ALJ evaluated both the Progress Notes and Dr. Basra's Letter, as they are referenced repeatedly in his decision. (R. at 20–23.)

The ALJ was not able to evaluate the Shields Report because it was submitted after his decision in this matter. (R. at 5.) Nevertheless, the Appeals Council considered it and found that it did not provide a basis for changing the ALJ's decision. (Id.) The relevant regulation states that "we will evaluate" all relevant medical records, 20 C.F.R. § 404.1527(c), and "we," in this context, refers to the SSA as a whole, including post-ALJ review by the Appeals Council. Id. § 404.1502. So, although the ALJ himself did not review the Shields Report because it was not available to him, it was evaluated by the Commissioner through the Appeals Counsel's consideration of Buckley's request for review. And, when the Appeals Council finds new evidence to be consistent with the existing record, it has the discretion to leave the ALJ's decision undisturbed. Mills v. Apfel, 244 F.3d 1, 6 (1st Cir. 2001). Moreover, the findings in Dr. Basra's Letter and the Shields Report are in fact very similar, both noting that Buckley has L5-S1 disc degeneration and Grade I spondylolisthesis with bilateral L5 pars fractures. (Compare R. at 411, with id. at 554.) Because

4

of this similarity, the Appeals Council's conclusion that the Shields Report did not warrant changing the ALJ's decision is consistent with the record and was well within its discretion.

As for the evidence used to arrive at the conclusion that Buckley's impairments were "severe" but not indicative of more serious medical conditions than identified by the ALJ, the ALJ appears to have considered the record in its entirety. There are a number of medical opinions and reports prepared by Buckley's treating physicians describing the stable maintenance of Buckley's health with a medication based treatment plan, (see, e.g., id. at 296, 299), along with reports prepared by doctors consulting for the Department of Disability Services ("DDS") that indicate that Buckley was able to perform work and that thus support the denial of benefits. (Id. at 94–109.) Although the ALJ's finding that Buckley's impairments were not disabling might not have been the only conclusion which could have been reached, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citing Richardson, 402 U.S. at 399).

Consequently, it is apparent that the ALJ's decision on this issue was not due to a failure to consider relevant medical records, nor was it due to an error by the Appeals Counsel in denying Buckley's request for review. Rather, the determination of the nature and extent of Buckley's impairments was based on substantial evidence.

> B.    Substantial evidence supports the finding that Buckley does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments

Buckley argues that because the Commissioner did not properly evaluate exhibit #19F, the finding that Buckley's impairments do not meet or equal one of the impairments listed in 20 C.F.R.

5

Part 404, Subpart P, app. 1 is not supported by substantial evidence.[5] Exhibit #19F is a medical report dated August 11, 2014, which was prepared by Dr. Richard Fraser about two weeks before the ALJ hearing. (R. at 550–51.) The report concludes that Buckley was permanently disabled, and his spinal condition could be accurately characterized as a listed "Disorder of the Spine." (Id. at 511); See 20 C.F.R. Part 404, Subpart P, app. 1, § 1.04.

The applicable regulations distinguish between "treating sources" and "nontreating sources." A treating source is a "physician . . . who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502 (2011) (amended March 26, 2017). A nontreating source is "a physician . . . who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." Id. An ALJ must evaluate each medical opinion in the record, regardless of the source, though the ALJ may give one opinion more or less weight than another. See id. § 404.1527(c). In this case, it is evident that the ALJ evaluated Dr. Fraser's Report, as his decision both expressly addresses it and indicates a familiarity with its content. (R. at 17.) The question, therefore, is whether the ALJ acted appropriately in giving Dr. Fraser's opinion less weight than other sources.

In deciding how much weight to assign a medical opinion, the ALJ must consider: (1) the examining relationship between the claimant and the source; (2) any treatment relationship between the claimant and the source (including the length of the treatment relationship, the frequency of examinations, and the nature and extent of the treatment relationship); (3) evidentiary support for the opinion; (4) the opinion's consistency with the record as a whole; (5) the

---

[5] If a claimant's impairment meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app 1, the SSA will find the claimant disabled within the meaning of the Act. 20 C.F.R. 404.1520(a)(4)(iii).

specialization of the source; and (6) other factors the claimant or others raise. 20 C.F.R. § 404.1527(c)(1)–(6).

Dr. Fraser opines that Buckley's condition rises to the level of a Disorder of the Spine, (R. at 551), which is characterized by "the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason." 20 C.F.R. Part 404, Subpart P, app. 1 § 1.00(B)(2)(b). However, when an ALJ finds that the record as a whole indicates a higher level of functioning than that indicated by a particular medical opinion, it is appropriate for an ALJ to find that opinion deserving of less weight. Coggon v. Barnhart, 354 F. Supp. 2d 40, 56 (D. Mass. 2005).

Dr. Fraser's Report was apparently prepared in support of Buckley's application for disability at the request of Buckley's legal counsel; Dr. Fraser had never treated Buckley prior to the examination on August 11, 2014. (R. at 550–51.) Dr. Fraser can be accurately characterized as a "nontreating source" because of the lack of a long term medical relationship with Buckley, whom he apparently saw only once. It was therefore appropriate for the Commissioner to give more weight to Buckley's "treating sources." See Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 1994 WL 251000, at *3 (1st Cir. June 9, 1994) ("a treating doctor's report may be entitled to 'greater' weight than an inconsistent non-treating source"). Furthermore, Dr. Fraser's conclusion is unsupported by and inconsistent with a substantial amount of other evidence in the record, a factor which the ALJ was required to consider in determining how much weight to give this medical opinion. See 20 C.F.R. § 404.1527(c)(3)–(4). Notably, the ALJ found that Dr. Fraser's assessment was inconsistent with Buckley's conservative treatment history, as well as with the objective examination findings and imaging studies, which generally reveal only a mild-to-

moderate degree of impairment. (R. at 23.) For example, office treatment records from Feldman Orthopedic & Wellness Center of Florida dated January 7, 2013, note that an MRI of Buckley's spine revealed "minimal" changes and abnormalities, (id. at 415), and a laboratory test report from the Marlborough Hospital dated June 14, 2013, found a "moderate degree" abnormality that affected Buckley's legs. (Id. at 479.)

Because the Commissioner adequately evaluated and considered Dr. Fraser's report and drew his conclusions from evidence in the record, the finding that Buckley's impairments do not meet or equal a listed impairment was based on substantial evidence.

> C.    The Commissioner did not err in finding that Buckley can perform "light work"[6]

The ALJ found that Buckley has the RFC to perform "light work," except that he could only sit for one hour at a time for a total of six hours in an eight-hour workday, and could never climb ladders, ropes, or scaffolds. Buckley contends that this finding is not supported by substantial evidence for the following reasons: the ALJ ignored the Progress Notes, Dr. Basra's Letter, and the Shields Report; and the ALJ improperly diminished the probative value of Dr. Fraser's Report.

As discussed above, the record does not indicate that the ALJ ignored the Progress Notes or Dr. Basra's Letter. Rather, it is apparent that these medical evaluations were properly evaluated and included in the ALJ's decision-making process. Additionally, while the Shields Report was not submitted until after the ALJ's decision was made, it was evaluated by the Appeals Council when it considered Buckley's request for review. Again, this degree of evaluation is consistent

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Work in this category also requires "a good deal of walking or standing," or "involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

with the requirements of 20 C.F.R. § 404.1520 as interpreted by the First Circuit. See Mills, 244 F.3d at 6.

The ALJ's finding that Buckley could perform light work with some limitations is also supported by other parts of the record, specifically by exhibits #1A and #2A, which are Disability Determination Explanation Physical RFC records prepared by DDS consulting physicians. (R. at 94–108.) These opinions indicate that Buckley could lift up to 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand or walk for six hours in an eight-hour workday. (Id. at 99, 107.) These opinions also indicate that Buckley was able to perform other physical tasks associated with light work, such as occasional climbing, kneeling, crouching, stooping and crawling. (Id.) These conclusions were based on a consideration of Buckley's medical records, and Buckley's remarks to the physicians which indicated he was able to adequately perform activities of daily living ("ADLs"), including cooking meals, doing chores, walking, using public transportation, and shopping. (Id.) Moreover, these opinions state that although Buckley has some limitations in the performance of certain work activities, these limitations would not prevent him from performing a number of positions that could be accurately characterized as involving "light work." (Id. at 100, 108.)

Although Dr. Fraser's assessment of Buckley differs from those of the DDS physicians "[i]t is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence." Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The ALJ was therefore entitled to credit the opinions of the DDS physicians and rely on them, as well as objective evidence in the record, in concluding that Buckley was able to perform "light work" with some limitations.

D.    The finding that Buckley is able to perform past work as a sales manager is supported by substantial evidence

Buckley contends that because the ALJ ignored the Progress Notes, Dr. Basra's Letter, the Shields Report, and Dr. Fraser's Report, the finding that Buckley was able to perform past relevant work as a sales manager was not based on substantial evidence. As previously explained, the allegations that the ALJ ignored those materials are inaccurate.

The Dictionary of Occupational Titles ("DOT") defines the occupation of "Sales Manager" as a sedentary, skilled position with a Specific Vocational Preparation ("SVP") rating of 8, meaning that it would take a typical worker "over 4 years up to and including 10 years" to learn the techniques, acquire the information, and develop the facility needed for average performance in the position. See Dictionary of Occupational Titles, #187.167-018 (U.S. Department of Labor, 1991); id. app. C.

Vocational Expert James F. Scorzelli ("VE") testified that Buckley's Work History Report indicated that he performed the position as a Sales Manager at an SVP of 6 in a sedentary capacity.[7] (R. at 86.) The VE further testified that because Buckley had developed both sales and managerial skills through his prior employment, he was qualified to perform a sales manager position in the telemarketing field. (Id. at 87.) The ALJ found the testimony of the VE to be consistent with the DOT and took it into consideration in arriving at his conclusion that Buckley is able to perform past relevant work. (Id. at 25.) In questioning the VE, the ALJ proposed a hypothetical individual with the ability "to sit for one hour at a time for a total of six hours in an eight hour day . . . stand

_____

[7] An SVP of 6 indicates that a typical worker would need over one year up to and including two years of relevant training to accrue the skills necessary for average performance in a specific occupation. See DOT, app. C. Sedentary work requires exerting up to 10 pounds of force occasionally and a negligible amount of force frequently, involves sitting most of the time, and may involve brief periods of standing and/or walking. 20 C.F.R. § 404.1567(b).

and/or walk for one hour at a time for a total of four hours in an eight hour work day . . . and carry 20 pounds occasionally and 10 pounds frequently." (Id. at 88.) The ALJ then asked the VE whether that hypothetical individual would be able to perform any of Buckley's past work, to which the VE responded "he could be a sales manager." (Id. at 89.) The ALJ was entitled to credit the VE's testimony on this matter "as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert." Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991).

In his Work History Report dated April 24, 2013, Buckley reported that in his capacity as a Sales Manager for Pabst Company he utilized "technical knowledge or skills" and regularly completed written reports. (R. at 225, 227.) Additionally, Buckley's Work History Report indicates that he was required to occasionally lift items weighing 20 pounds, frequently lift items weighing 10 pounds, sit for up to two hours per day, and stand or walk for up to six hours per day. (Id.) As previously noted, the medical reports prepared by the DDS indicate that Buckley is capable of lifting 20 pounds occasionally, lifting 10 pounds frequently, sitting for up to six hours per day, and standing or walking for up to six hours per day. (Id. at 99.) These medical reports support the hypothetical posed by the ALJ in his questioning of the VE, thereby justifying the ALJ's reliance on the VE's testimony in determining that Buckley was capable of performing past relevant work. See Berrios Lopez, 951 F.2d at 429.

The ALJ's finding that Buckley had the RFC to work as a sales manager is supported by substantial evidence in the record, namely Buckley's employment history and medical records, along with the testimony of the VE which was properly relied upon by the ALJ in his decision making process.

11

E.    The finding that Buckley has not been under a disability within the meaning of the
      Act from November 20, 2010, through the date of the ALJ's decision is supported
      by substantial evidence

Buckley argues that this finding is not supported by substantial evidence in the record because the Commissioner ignored the Progress Notes, Dr. Basra's Letter, the Shields Report, and Dr. Fraser's Report. For the reasons explained above, the allegations regarding the Commissioner's ignorance to these exhibits are unfounded.

A disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether an individual is disabled within the meaning of the Act, the ALJ is required to conduct a five-step sequential evaluation process. Id. § 404.1520(a)(4)(i)–(v). Notably, step four requires the ALJ to find the claimant "not disabled" if the claimant can still do past relevant work based on the claimant's RFC and employment history. Id. § 404.1520 (a)(4)(iv). Past relevant work is defined as work that a claimant has done within the past 15 years that resulted in substantial gainful activity. Id. § 404.1560(b). Additionally, step five requires that if the ALJ determines the claimant is able to make an adjustment to other work based on the claimant's RFC, age, education, and work experience, the claimant shall be deemed not disabled. Id. § 404.1520(a)(4)(v). The ALJ must use the same RFC capacity assessment when deciding if a claimant can adjust to other work as was used in deciding whether the claimant could do past relevant work. Id. § 404.1560(c).

First, the record indicates that Buckley could still do past relevant work. The VE testified to this at Buckley's oral hearing before the ALJ, stating that Buckley could work as an automobile sales person "as performed" in his previous capacity. (R. at 88.) Although this position is not listed

12

in his Work History Report, (see id. at 225), Buckley testified that he was employed as an automobile salesman beginning in 2005 and described his responsibilities in detail at the oral hearing. (Id. at 42–45.) Second, the record indicates that Buckley could make an adjustment to other work, as the VE testified that Buckley had skills that would be transferable to a position as a "sedentary" salesperson in telemarketing with little vocational adjustment.[8] (Id. at 87.) Accordingly, the VE's conclusion that Buckley could work as an automobile sales person and had transferable skills is supported by evidence in the record, and the ALJ was entitled to rely on that conclusion. See Berrios Lopez, 951 F.2d at 429.

Although the ALJ's finding that Buckley was not disabled may not have been the only possible conclusion in this matter, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts." Rodriguez, 647 F.2d at 222 (citing Richardson, 402 U.S. at 399).

F.    The Commissioner's findings were not based on an error of law as the SSA evaluated every medical record received

Buckley argues that because the ALJ failed to evaluate the Progress Notes, Dr. Basra's Letter, and the Shields Report, all of the aforementioned findings challenged by Buckley for lack of substantial evidence were also based on an error of law. Again, because each of these documents was appropriately evaluated, this allegation is baseless. Buckley also contends that because the ALJ failed to evaluate Dr. Fraser's Report as required by 20 C.F.R. § 404.15279(c)(1) and 20 C.F.R. § 404.15279(c)(5), the ALJ's decision is invalid due to an error of law.

"Generally, [the Commissioner will] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20

___

[8] Individuals who can perform "light work" are determined to also be capable of performing "sedentary work." 20 C.F.R. § 404.1567(b).

13

C.F.R. § 404.1527(c)(1). While it is true that Dr. Fraser examined Buckley on one occasion, the record contains many examples of medical sources who examined Buckley on multiple occasions over periods of months and years. (See, e.g., R. 293–341; 484–508; 517–43.) As previously discussed, an ALJ has the discretion to decide which medical reports should be given greater weight than others, and the ALJ's decision to give Dr. Fraser's opinion less weight than other treating physicians' reports in this situation was a considered one, and not an abuse of that discretion.

The SSA "will generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.15279(c)(5). Dr. Fraser is an Occupational Physician, which suggests that he is a specialist regarding medical issues related to an individual's ability to work. This is not, however, the sole consideration in determining whether a specialist's opinion will be given more weight than another medical opinion. The SSA must also consider the consistency of the specialist's opinion in relation to the record as a whole, and the extent to which the specialist's opinion is supported by evidence in the record. Id. § 404.15279(c)(3)–(4). In this instance, Dr. Fraser's Report is both inconsistent with the record as a whole, and is not supported by evidence in the record. For example, Dr. Fraser's Report concludes that Buckley's "disability is total and permanent," and that Buckley has "reached a medical endpoint." (R. at 551.) However, Buckley was informed by Dr. Basra and his treating physicians at Feldman Orthopedic & Wellness Center that various alternative treatment options were available, including physical therapy, injections, and surgical intervention. (Id. at 411, 415.) Buckley repeatedly declined to undergo surgery in favor of a more conservative medication based treatment plan, (id. at 411, 416), despite being told on multiple occasions that narcotics were not a long term pain management solution. (Id. at 415,

511.) It appears from the record that his participation in physical therapy was sporadic and limited. There are no records of extended physical therapy in the record. Simply put, there is much evidence supporting the notion that Buckley has medical avenues yet to be explored, and there is no evidence supporting Dr. Fraser's conclusion (except his own opinion) that Buckley is at a medical endpoint.

Because of the inconsistency of Dr. Fraser's Report with the record as a whole, it was appropriate for the Commissioner to find Dr. Fraser's Report deserving of less weight despite the fact that Dr. Fraser may well be a specialist in workplace-related health.

It is evident that the ALJ evaluated every medical record submitted to him, and that the Appeals Council evaluated additional medical records that were submitted after the ALJ issued his decision. The findings of the ALJ's were based on substantial evidence and there was no error of law.

## III.   Conclusion

In light of the foregoing, Buckley's Motion to Reverse the Decision of the Commissioner (dkt. no. 15) is DENIED, and the Commissioner's Motion to Affirm the Commissioner's Decision (dkt. no. 19) is GRANTED.

The decision of the Commissioner is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge